IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| C. MICHAEL KAMPS, | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO.: W-12-CV-283 |
| | § | |
| BAYLOR UNIVERSITY, | § | |
| KENNETH WINSTON STARR, in his | § | |
| official capacity as President of Baylor | § | |
| University, ELIZABETH DAVIS, in her | § | |
| official capacity as Executive Vice President | § | |
| and Provost of Baylor University, DAVID | § | |
| SWENSON, in his official capacity as Chair | § | |
| of the Admissions Committee and Chair | § | |
| of the Scholarship Committee of Baylor | § | |
| Law School, and Members of those | § | |
| Committees, | § | |
|     Defendants. | § | |

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6), RESPECTIVELY

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Baylor University, Kenneth Winston Starr, Elizabeth Davis and David Swenson (hereinafter "Baylor" or "Defendants"), with this Motion to Dismiss For Lack of Jurisdiction and For Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6), and in support thereof would show the Court the following:

### BACKGROUND

1.     Plaintiff C. Michael Kamps ("Kamps") sued Defendants alleging discrimination under 42 U.S.C. §6101 *et seq.*, Age Discrimination Act of 1975 (the "Act"), arising from the alleged denial of his admittance into Baylor Law School ("BULS") in a fall class (as opposed to a spring or summer class), as well as an alleged denial of certain scholarship assistance, based

upon the use - as is admittedly standard and customary among colleges and universities - of his Law School Admission Council ("LSAC") reported grade point average ("GPA") as a factor relevant to his admission to BULS. *Complt.*, Ex. H, ¶53-60.  In fact, Kamps claims that because of his age, his 3.2 GPA *should* have been adjusted upward to a 3.6 by BULS.  Kamps also claims that after BULS realized his age, and that he might need to be admitted because of the (claimed) GPA adjustment from his Texas A&M University ("TAMU") 1979 3.2 GPA, BULS personnel *changed* the factors they relied upon to determine the award of a discretionary scholarship - to specifically exclude *him*[1] from entry into the Fall 2010 class and remove him[2] from scholarship consideration[3].

2.     BULS, in Spring 2009 (one year before the decision on Kamps' Fall 2010 application) determined it would utilize GPA *and* LSAT as independent factors in evaluating BULS admissions.  *Complt.*, Ex. J, ¶15.  In Fall 2009, the basic minimum benchmarks for the discretionary Nance Scholarship (available only to TAMU graduates) were accordingly changed to 3.4 GPA, and to 162 LSAT.  Those changes were communicated to the TAMU nomination committee in February 2010, prior to the March application deadline.  *Complt.*, Ex. J at ¶17.

---

[1]As opposed to the other 3091 applicants for the Fall 2010 quarter at BULS.  See *Complt.*, Ex. K.

[2]"Prior to the earliest date of any record of this decision, Defendants knew the credentials of the applicant pool, knew that Plaintiff was the only qualified applicant under the existing qualifying criteria and knew that there were three other, much younger, potential applicants who, though not qualifying under the existing and long-established terms, had been offered admission to the Law School.... The qualifications were changed, and the new qualifications set at levels to accommodate the younger candidates' inability to meet the formidable 200 Baylor Index requirement, and to fatally injure Plaintiff's candidacy, the only one which had been able to meet the former standard." *Complt.* ¶80, ¶90.

[3]Yet the Nance Scholarship over which he sues relies upon an initial nomination by a *TAMU* Nominating Committee. As evidenced by the attachments to Kamps' Complaint, he was *not* nominated initially by the Committee, then following pressure by Kamps, he was advanced to the 2nd alternate position, but behind the three nominated TAMU students. *Complt.*, Ex. J, ¶15. Of note is the fact that *despite* his claim that TAMU officials accepted his arguments - in fact, found them "compelling" - *TAMU* itself did not adjust his TAMU GPA upwards to the 3.6 he claims (or even a 3.4) to find him qualified for the Nance Scholarship. *See Complt.* ¶48, 98.

3.      As Kamps admits, he was denied admission to the BULS Fall 2010 entering class, placed on the BULS Fall 2010 waiting list, and notified of that decision in February 2010. *Complt.* ¶29.  There were *no* waiting list students admitted from the Fall 2010 quarter.  *Complt., Ex. J,* ¶10. Yet Kamps was, at that time, offered admission to the Summer 2010 or Spring 2011 classes.  *Complt.* ¶106.  Kamps voluntarily declined these opportunities[4], and instead sought admission into the Fall 2011 quarter.  *Complt.* ¶31.  He *also* claims to have allowed his application for the Nance scholarship to remain pending; although it is not clear that he reapplied for that scholarship, and it is not alleged that he was actually nominated by the TAMU Nominating committee for the Fall 2011 entering quarter.  *Complt.* ¶147.

4.      As a basis for his claims, Kamps claims that "grade inflation"...... is so well documented, and so universally accepted in all areas of society... as to qualify as an undisputed fact." *Complt.* ¶ 49. That is not the case at all, and is not necessarily true at any given institution or subunit – such as the Mays Business School at TAMU.  *Complt., Ex. J* ¶8.  Moreover, the basis for Kamps' projected increase to a 3.6 GPA is what he claims to be his relative class rank - projected into today's academic competition.  *Complt.,* ¶64.   In fact, far from admitting that "grade inflation does exist" as Kamps claims, Defendant, David Swenson, stated in his Response to the Baylor Civil Rights grievance proceeding that:

> there is no indication that a determination could be made as to what percentage of an increase in median grades is due to an increase in student quality and what percentage is due to a more arbitrary change in the grading system at various schools.  Realistically, some undergraduate schools may have experienced grade inflation primarily due to increases in student quality while others have not. The mere fact that anyone finished at the median level some years ago does not mean that he or she would finish at the same level today at the same school.

---

[4]In part because he perceives the Fall entering classes to be more academically challenging and competitive.  *Complt.,* ¶110, Ex. J.

*See Complt.* Ex. J, ¶7.

5.      Yet, what Kamps wants to accomplish through this lawsuit is to force an artificial increase in his LSAC reported GPA, as against other prospective students, based upon national studies he claims show increasing undergraduate grades over time, so that he can be admitted to the Fall quarter at BULS, as opposed to the other quarters where he has already been offered admission[5].  That theory is neither well accepted, nor a practical solution – for instance the statistics that Mr. Kamps uses do not address his *actual* school, the Mays School of Business at TAMU.  *Complt.* Ex. J, ¶8.  Nor does it fit the common law school usage of the "candidate assembly service" ("CAS"), as part of the law school admission process overseen by LSAC.  *Complt.*, Ex. J, ¶6.  Prospective law students submit their transcript materials to LSAC which in turn reports undergraduate GPA and LSAT to schools requested by each student.  *Id.*  Thus, BULS does not calculate the GPA for individual candidates.  The LSAC "compiles and consolidates" the transcripts using procedures it has established.  *Id.*  "No adjustments are made by LSAC to these grades based upon the dates of attendance."  *Id.*  LSAC has released reports over the years "verifying that the UGPA is one of the best quantitative predictors of academic success in law school that is available."  *Id.*

6.      Yet, even if there *was* grade inflation at some institutions, without a standardized adjustment process through an entity like LSAC, Professor David Swenson notes that

> there is no practical solution to account for grade inflation on a systematic basis, even if it is calculable.  There are thousands of undergraduate schools.  No law school has the resources to individually analyze each undergraduate school's grading patterns.  Morever, even if we could identify an amount by which a school has increased its median grades

---

[5] These are the quarters he categorizes as "separate but not equal" because he claims they are not as "competitive" as the fall entering classes.  *See Complt.* ¶110.

beyond an increase in student body quality, it is not necessarily true that has happened in all departments of that school.   Mr. Kamps actually helps make this clear as his argument moves interchangeably between pointing out what has happened to grade medians at the Texas A&M Business School to arguments based upon percentage increases in grade averages among top universities at a national level.

*Complt.*, Ex. J, ¶8.

7.      Rather than accept the offer of admission to the Summer 2010, or Spring or Summer 2011 quarters, in part because of his claim that the education for those entering quarters is less academically rigorous, Kamps again sought admission to the Fall quarter 2011. *Complt.*, ¶31.  Based on the same GPA and LSAT factors as utilized for Fall 2010, (separate unadjusted GPA and LSAT factors), Kamps was again not offered admission to BULS for Fall 2011.  He was again advised that he was not admitted, but wait-listed on March 5, 2011. *Complt.,* Ex. I, p. 61; Ex. T, p. 12.  Once again, however, Kamps was offered admission to the Spring and Summer 2012 quarters, but he again chose to decline that option.  He instead reapplied for the Fall of 2012, where he again was not offered admission. As a result, Kamps also claims retaliation.[6]

8.      As result of these various factual allegations, Kamps makes an Equal Protection claim, based upon *Hopwood v. University of Texas* (styled <u>Hopwood 1998</u> in the Complaint), as well as claims of age discrimination, in supposed violation of 42 USC §6101, *et seq*, with respect to refused admission for the Fall 2010 and 2011 years, and the claimed denial of scholarship benefit for those quarters (since he claims that he was the "top-ranked candidate in terms of academic performance"), as well as a retaliation claim relative to Fall 2012 under the Act.  *See Complt.* ¶142-186.

---

[6]Although the retaliation and/or discrimination claim for Fall 2012, has not been the subject of a complaint filed with the Department of Education, as required by 34C.F.R. §110.31.

## NO SUBJECT MATTER JURISDICTION UNDER ACT BECAUSE ADMINISTRATIVE COMPLAINTS UNTIMELY FILED

9.      Kamps alleges that he applied for admittance to the BULS 2010 Fall entering class on October 30, 2009. *Complt.*, ¶27. He claims that he knew at the time of his application that his "aging UPGA . . . might unfairly prejudice his candidacy." *Id*. ¶28; Ex. A, ¶ 8. As early as February 17, 2010, Kamps admits he learned that he had been denied admission and put on the waiting list for admission, *and he* claims he was informed then that the qualifications for the Nance Scholarship "had been changed in such a way as to disqualify" him due to his age. *Id*. at ¶29, ¶96; Ex. A, ¶9[7]. Under the relevant Regulations, Kamps was required to file an administrative complaint - Kamps had 180 days from the date of his first knowledge of the alleged discrimination (February 17, 2010) to file a complaint with the Department of Education, in order to satisfy jurisdictional requirements and exhaust his administrative remedies under the Act. 34 C.F.R. § 110.31 (complainant shall file complaint within 180 days of first knowledge of alleged discrimination). These requirements are jurisdictional, and an untimely filing of the administrative charge bars a plaintiff's suit. *Parker v. Bd. of Supervisors*, 270 Fed. Appx. 314, 317 (5th Cir. 2008); *D.A. v. Houston I.S.D.,* F. Supp. 2d 603, 620-1 (S.D. Tex. 2009); *Mandu v. Eidgahy*, 2011 WL 2446384 (S.D. Cal. 2011); *Williams v. Trevecca Nazarene Coll,* 162 F2d 1162 (6th Cir. 1998).

10.     Plaintiff admits to having knowledge as early as February 17, 2010, that he had been denied admission to BULS for the Fall 2010 quarter. Likewise, he admits he knew as early as February 15, 2010 that the minimum benchmarks for the Nance Scholarship had been

---

[7]By the time the Fall quarter started on or about August 23, 2010, Plaintiff was well aware that he had not been admitted and had not received the Nance scholarship. *Complt.*, ¶31; ¶101; Ex. A, ¶12.

changed. *Complt.* ¶77; Ex. A, ¶9, 10. Thus, Plaintiff had until August 16, 2010, to file the required complaint with the Department of Education. 34 C.F.R. §110.31. Yet, Plaintiff admits that he did not do so until over fourteen (14) months later, on October 27, 2011. *Complt.*, ¶18. Plaintiff's complaint filed with the Department of Education was clearly not timely and his claims under the Act as to Fall 2010 admission and Nance Scholarship denial for Fall 2010, should be dismissed, as the Court does not have subject matter jurisdiction of same. *See Counts* Two through Five*, and Nine. *Complt.*, ¶150-169, 183-86.

11.      This is *also* true as to denied admission to the Fall 2011 class and the related Nance Scholarship claim, because the claim of discrimination under the Act is admittedly made based upon the application of the same factor (non adjusted GPA) which is allegedly age discriminatory - and of which Plaintiff became aware in February 2010[8]. Kamps *also* admits he was notified March 5, 2011 of the fact that he was again denied admission and was wait-listed for the BULS Fall 2011 entering class. He thus had until September 1, 2011 - 180 days later - in which to file his administrative complaint under the Act relative to Fall 2011. 34 C.F.R. §110.31. He failed to do so, and instead filed his Complaint on October 27, 2011, almost 60 days late. *Complt.*, ¶18. Accordingly, Counts Six, Seven, and Nine should be dismissed. *Id.* at ¶170-78, 183-80.

---

[8]As is clear, when a claimed discriminatory decision is made (or act is taken) as claimed here - the claim related thereto has accrued and requires the filing of an administrative charge (here, his Complaint) even though the resulting effect is felt later. *Ledbetter v. Goodyear Tire*, 550 U.S. 618, 628-29 (2007); *Del. State College v. Ricks*, 449 U.S. 250, 258 (1980), ("The proper focus is upon the time of the discriminatory acts, not upon the time as which the consequences of the acts become most painful."); *Lorance v. AT&T Techs., Inc.*, 490 U.S. 900, 90-5-06 (1989). Thus, his challenge to (and Complaint about) that usage of unadjusted GPA factors would have to have been made within 180 days of the initial knowledge in February, 2010, if it was to be made at all. The fact that the same result reoccurred for Fall 2011 admission, based upon the same unadjusted GPA factors does not rejuvenate that claim, as it is simply an effect of the previously claimed discriminatory decision(s). Yet, even for the Fall 2011 admission denial he failed to file within 180 days of being advised of that decision.

12.     The same standard would apply as to the Fall 2012 admission denial and the claimed retaliation - as no charge or administrative complaint was *ever* filed (nor is one even claimed) - either as to claimed discrimination or retaliation for the decision relative to the Fall 2012 entering class, and thus, those claims are likewise barred.  34 C.F.R. §110.31.

13.     Because Kamps failed to properly and timely exhaust his administrative remedies, his claims.  Based on the Act, Counts Two through Nine with the exception of the Equal Protection claim (Count One) are barred.

## PLEADINGS FAIL TO STATE A CLAIM

14.     Kamps also fails to state a proper claim as is required by FED. R. CIV. P. 8, and the Supreme Court case of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Plaintiff is required to provide a "short and plain statement of the claim showing that the pleader is entitled to relief. ..."  The pleadings cannot simply offer "labels and conclusions" or "unadorned, the - Defendant - unlawfully - harmed - me accusation(s)." *Id.* at 677-78.  In fact, *Iqbal*, holds that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 678-79 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 554 (2007)).

15.     Facial plausibility requires the Plaintiff to allege facts supporting recovery under a viable legal theory. Although heightened fact pleading of specifics is not required, the Plaintiff must include enough facts to provide fair notice of the nature of his claims and the grounds on which they rest. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n. 3 (2007). Unsubstantiated accusations, conclusory assertions, or a "formulaic recitation of the elements of a cause of action will not do." *See Iqbal,* 556 U.S. at 677-78 (quoting *Twombly,* 550 U.S. at 555). Here, the pleadings are conclusory, replete with unsubstantiated accusations, and seek to impose an

unmanageable burden on Baylor, which to its knowledge is not imposed by any other Court on any other university or institution[9].

16.    Moreover, the claim that BULS singled Kamps out and changed its scholarship standards for the Nance Scholarship specifically  so as to deny *him* (as opposed to three other students) the discretionary award is absurd, impossible based solely on timing, and beyond conclusory - since he admittedly was not a part of those decisions and has no factual clue as to how (or when) these decisions were even made. *See Complt.*, Ex. J, K.  The outlandish allegations that the Law School *knew* of Kamps application for both the BULS and the Nance Scholarship, realized the GPA adjustment he seeks here would vault him into the top qualifying spot, and thereafter manipulated the scholarship standards to exclude him do not even purport to be grounded in any fact of which he has knowledge, or to which he can attest. *For instance, see Complt.*, Ex. J, ¶¶15, 17, 18.  Those claims are pure supposition on his part, and offer no basis upon which to plead how or why the use of GPA and LSAT factors themselves changed[10]. Moreover, based on the timing *he* pleads, the claimed machinations to exclude him are impossible[11].

---

[9]Defendant's research has not produced a single case where this novel theory – of age discrimination based upon the standard use of reported GPA in the admission process - has been accepted (or even litigated) in any court. Moreover, as pointed out by David Swenson, even if true, there is no "practical solution to account for grade inflation on a systematic basis, even if it is calculable. There are thousands of undergraduate schools. No law school has the resources to individually analyze each undergraduate school's grading patterns." *See Complt.* Ex. J, ¶8.  Instead, law schools such as BULS typically and customarily rely upon LSAC reporting (which does not adjust GPA's for claimed grade inflation). *Id.* at 6.

[10]As shown by Swenson - the usage of the GPA and LSAT factors used for admission consideration were actually changed in the Spring 2009, before Kamps even applied to BULS, and the corresponding change in criteria for the Nance Scholarship was actually decided in Fall 2009, but not communicated to TAMU until February, 2010.  *See Complt.* Ex J. ¶15, 17.  Kamps knew in February 2010 of the change because he complained about it to TAMU - and then still applied for the Scholarship. *Complt.* ¶29; Ex. 1, p.5..

[11]Kamps admits the Nance benchmarks were communicated to TAMU in February 2010 - he complained then about them.  Yet - the Nance applications were not due at TAMU until early March, 2010 and TAMU nominations did not issue until late March, 2010.  Thu,s BULS could not have known who the qualifiers

17.     Regardless of how well-pleaded they may be, the factual allegations must show an entitlement to relief under a valid legal theory. Complaints "based on an outlandish legal theory or on a close but ultimately unavailing one" should be dismissed. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stadler,* 105 F.3d 1059, 1061 (5th Cir.1997). The claim of age discrimination based upon standard GPA usage is a first and Kamps fails to explain why - if GPA is flawed - it is reported and used by the LSAC for general reporting to, and usage by law schools nationally, and why BULS should be singled out for using it.  He is *not*, as argued, entitled to impose his choice of what he perceives to be a *better* admissions criteria at BULS, just because he fares better[12].  Courts typically give academic decisions, including student admissions, great deference. *Regents of Univ. Of Mich v. Ewing,* 474 U.S. 214, 225,(1985); *Board of Curators of Univ. of Mo. v. Horowitz,* 435 U.S. 78, 96, n. 6, (1978); *Bakke,* 438 U.S. 265, 319, n.53. (no warrant for jurisdictional interference in academic process) (opinion of Powell J.).  In fact, universities occupy a "special niche in our constitutional tradition." *Grutter v. Bollinger*, 539 U.S. at 309.  This extends to selection of students. *Id.; Bakke,* 438 U.S. at 312-3 (who may be admitted to study is essential academic freedom).  Thus, "good faith" is presumed on the part of a university. *Id.* at 318-9.  No lack of good faith in use of unadjusted GPA and LSAT admissions factors is shown here.

18.     The Act, as relied upon by Kamps, does not prohibit the use of standard and facially neutral reported GPA in admissions.  Instead, it prohibits the use of *age* as a factor. Kamps makes the jump to age discrimination through GPA usage through several unvalidated

---

were - until applications were made to TAMU, and results announced -long after the admitted notice to TAMU of change in benchmarks.

[12]*See Complt.*¶61 - 67, as he seeks to use class rank or some other measure that benefits him.

assumptions - that of rampant, unchecked grade inflation (caused by easier grading)[13], for the same courses and course loads[14], at the Mays Business School at TAMU[15], between different academic generations[16], such that he would have a 3.6 GPA[17] if in school now.  Individually, these assumptions are speculative at best, and stacked one upon the next, they must fall.

19.    In fact, were BULS to make the GPA adjustments demanded here by Kamps - for the very reasons he expresses - then it might very well be utilizing age as a prohibited factor under the Act relative to admission at BULS. Taken to its logical conclusion - *all* prospective entrant GPAs would have to be adjusted for undergraduate graduating year and institution   - and there is no guaranty Kamps would fare better.  Further - then the *younger* students might actually have a claim under the Act for BULS making the adjustment at all - when others do not - *and* for making the adjustment in the wrong way.  That claimed obligation thus makes little sense, particularly in the absence of a systematic reporting entity, such as LSAC, offering standard and reasonable adjustments to all GPAs.  To claim otherwise - that BULS has somehow violated the Act through its use of the commonly used and neutral GPA - puts BULS to an untenable and unrealistic choice of disputes, and potential exposure to endless litigation

---

[13]Not accepted universally at all, and if present may well be due to many different factors, including smarter students. *Complt.,* Ex. J, ¶7.

[14]This is an inherent assumption, and would require relative analysis of degree plan, courses, teachers, course requirements, text books and testing methods - over a 30 year period.

[15]Plaintiff graduated from the TAMU Mays Business School, but cites no overall undergraduate grade inflation information except from TAMU as a whole - which is not necessarily relevant, since it may or may not have occurred at the Mays Business School.

[16]Kamps also assumes - without any basis - that these different academic generations necessarily correlate to different age groups - which may or may not be true.  In fact, it is likely that they contain students of all different ages, and thus are not a valid measure of *age* discrimination.  *See Complt.,* Ex. N, p.2.

[17]Kamps tries to achieve this with the class rank to GPA assumption, but that proves nothing - and has no inherent guaranty of any degree of accuracy without analysis of the other underlying factors.

over admissions considerations.  Thus, Kamps' claims are not plausible, as is required.  *Iqbal* went on to explain that:

> a claim has facial plausibility when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged... It asks for more than a sheer possibility that the Defendant has acted unlawfully.

*Iqbal*, 556 U.S. at 678-79.  Even where a complaint pleads facts that are "merely consistent with" a Defendant's liability, under both *Iqbal* and *Twombly*, that is insufficient.  The most that can be said about Defendants here is that BULS utilized GPA reported by LSAC just as any other law school.  *Complt.*, Ex. E, J, ¶6.  It stands to reason that if there was to be any "adjustment" for older prospective students, as Kamps alleges should have been done - then LSAC should be the entity to offer a standard adjustment.  Yet, it does not.  *Id.*

20.     Nor is Kamps critical of his own *alma mater* - TAMU - even though arguably, *it* has the best tools and information to adjust reported GPA as between its own students, yet it chose not to do so in the context of Nance Scholarship nominations.  *Complt.*, 48, 98, Ex. S  ¶13, 15. The remainder of the allegations - that Kamps was singled out of other applicants, and the standards were changed because of *his* age, are conclusory and speculative at best - not the least of which because he has no factual basis to make those claims, beyond his own conclusions.  There are no properly pleaded facts under which Plaintiff can recover, and the Complaint does not satisfy *Iqbal* and *Twombly*.  Accordingly, it should be dismissed under Rule 12(b)(6).

## USE OF GPA FALLS UNDER EXCEPTION TO AGE DISCRIMINATION ACT OF 1975

21.     The purpose of the Act is "to prohibit discrimination on the basis of age in programs or activities receiving Federal financial assistance." 42 U.S.C. § 6101. The Act provides that "no person in the United States shall, *on the basis of age*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." *Id.* at § 6102 (emph. added). Usage of LSAC reported GPA to make academic admissions is a facially neutral factor that does not violate these requirements.

22.     Yet, to the extent it is claimed that use of unadjusted GPA *does* violate §6101, an express exception (applicable here) to the Act's prohibition can be found at 42 U.S.C. §6103 (b)(1) which provides that:

> It shall not be a violation of any provision of this chapter, or of any regulation issued under this chapter, for any person to take any action otherwise prohibited by the provisions of section 6102 of this title if, in the program or activity involved–
>
> > (A) such action reasonably takes into account age as a factor necessary to the normal operation or the achievement of any statutory objective of such program or activity; or
> >
> > (B) the differentiation made by such action is based upon reasonable factors other than age.

23.     The standard GPA measure reported by LSAC is such a "reasonable" factor. Accordingly, "a recipient is permitted to take an action otherwise prohibited . . . that is based on a factor other than age, even though that action may have a disproportionate effect on persons of different ages." *See* 34 C.F.R. § 110.13. Such "an action may be based on a factor other than age only if the factor bears a direct and substantial relationship to the normal operation of the program or activity or to the achievement of a statutory objective." *Id.* Even if LSAC reported GPA was a factor improperly based upon age under the Act (which is denied), then it

13

certainly falls within the "exception" provisions of §6103.  The GPA standard customarily used by colleges and universities across the nation - is a commonly utilized factor that obviously bears a "direct and substantial" relation to the admissions process at BULS - where it has admittedly been consistently used on an *unadjusted* basis. *See Complt.*, Ex. J, ¶6.  Plaintiff does not plead or claim otherwise; rather, he simply wants to be treated differently through an adjustment to his GPA pursuant to a novel theory, because it benefits him.

24.      Reliance upon GPA as a factor in the admission decision is customary - and as shown by the basic LSAC (a service which admittedly gathers and reports both GPA and LSAT numbers to law schools across the country) reported information admittedly bears a direct and substantial relationship to the normal operation of BULS.  Even if Plaintiff's grade inflation theory *were* true[18], § 6103 (b)(1) of the Act and 34 C.F.R. § 110.13 expressly permits a "recipient" such as Baylor to make decisions based upon a "reasonable" factor other than age.  In fact, GPA is the better indication of overall Law School success.  *Complt.,* Ex. J, ¶6.  Despite Kamps' argument that other measures or methods are better (because they benefit him) - BULS is entitled to make its own academic decisions as to how that common benchmark is utilized. *Grutter*, 539 U.S. at 328-29.

25.      Under the Act, this is true even if doing so has "a disproportionate effect on persons of different ages." 34 C.F.R. §110.13.  Baylor's consideration of both the GPA and the LSAT, is reasonable and customary.  In fact, even the Supreme Court has found GPA is a valid consideration for admissions to Law School.  *Grutter*, 539 U.S. at 315 (UPGA and LSAT are important, even if imperfect predictors).  Despite Kamps complaints, Baylor is not somehow

---

[18]One would think that if this theory were so universally accepted and obvious such that it becomes a part of the required admissions process, LSAC would create and utilize standard conversion factors to account for age discrimination in its GPA reporting - which it does not. *Complt.,* Ex. J, ¶6.

*required* to change the emphasis it places upon the GPA. *Id.* at p. 340. The Courts have traditionally given deference to academic decisions, *including* student selection. *Grutter*, 539 U.S. at 329. Good faith on the part of Baylor is presumed absent a contrary showing. *Id.*

26.     Despite the conclusory allegations of Kamps, no facts are pleaded that establish lack of good faith in BULS customary consideration of unadjusted GPA. Thus, his complaints under the Act (Counts Two - Nine),must be dismissed for failure to state a claim.

## NO MONETARY DAMAGES AVAILABLE

27.     Through his Complaint, Plaintiff also apparently seeks actual, nominal, exemplary and/or punitive damages. *Complt.*, ¶7; ¶149; ¶169; ¶181; ¶VI., F, L. Plaintiff *also* requests the Court to declare him a Joseph Nance Presidential Scholar and award him the Nance Scholarship funds[19], totaling $137,404.17. Yet, this Scholarship is discretionary and may or may not be awarded to *any* candidate, or it may be canceled in its entirety by BULS in its discretion. *Complt.*, Ex. J, ¶13. A forcible award of a completely discretionary scholarship is the functional equivalent of a monetary award. *Complt.*, ¶156-57, 161-62; ¶167-68; ¶177-78; ¶VI., E.

28.     The Act does not create a private right of action for monetary damages. *See* 42 U.S.C. §6104(e) (authorizing only injunctive relief and attorney's fees). Courts addressing this issue have held that monetary damages are not available under the Act. *See Long v. Fulton Co. School Dist.*, 807 F.Supp.2d 1274, 1286-87 (N.D. Ga. 2011)(citing several cases including *Marin* and *Rasmussen*); *Tyrrell v. City of Scranton*, 134 F.Supp.2d 373, 383-84 (M.D. Pa. 2001). Plaintiff's claims for monetary damages, including award of a Nance Scholarship, should accordingly be dismissed.

---

[19]The Nance Scholarship is admittedly discretionary - it does not have to be awarded at all, to anyone. Thus the forced award of the Scholarship is the equivalent of a monetary award not allowed by the Act.

## NOR HAS PLAINTIFF BEEN EXCLUDED FROM BAYLOR LAW SCHOOL

29.     Plaintiff claims, incorrectly, that he has been excluded from Baylor Law School due to his age.  He even seeks the only relief available - that of forced admission to BULS.  Yet he *has been offered admission but has turned it down.*  Kamps acknowledges that Baylor admits classes in the fall, spring and summer quarters, and while he claims to have been excluded, he *also* admits that Baylor actually offered him admission (more than once) to BULS for *other* quarters should he simply apply, which he rejected. *Complt.* ¶106; ¶109. An offer of admission was made to Plaintiff for the Summer 2010 class, as well as the Spring 2011 quarter. *Id.* at Ex. T, p. 1.  He was *also* offered admission to the Spring 2012 class.  *Id.* at Ex. T, p. 2.  Yet, he voluntarily chose not to accept or pursue admission in those Spring or Summer entering classes apparently as a result of his own bias against the perceived quality of students and level of academic competence in Spring or Summer classes.  *Complt.,* ¶109 - 113.

30.     Kamps was thus  not excluded from participation at BULS - admission simply was not offered at the time of Plaintiff's choosing.  In essence, he asks the Court to force  BULS to bend to *his* will as to *when* he is admitted, not simply to admit him.  The Act does not provide this type of relief, nor is injunctive relief available to require it, under these circumstances.   In fact, the Act prohibits *exclusion* - and it is clear he has not been *excluded* or denied admission.  42 U.S.C. §6102.  Rather, he has simply chosen to not attend at the offered times.  Beyond his speculation, there is no pleading of any real functional difference in the entering classes, or of degrees issued to graduates of different ending quarters.  In fact, just the opposite is true, as Swenson reaffirms "it is exactly the same program."  *Complt.,* Ex. J at ¶12.  Further, his insistence on Fall quarter admission, of course, violates the deference normally due academic decisions.  There is no basis under the Act to require more of BULS than has already been

offered him[20].   These claims are not sufficient under either *Iqbal* and *Twombly* to establish

exclusion or denial of access to, or exclusion from a legal education at BULS under the Act.

Therefore, Counts Two, Five, Six and Seven must be dismissed.

## NO EQUAL PROTECTION CLAIM AVAILABLE

31.     Nor does the "competing on equal footing" claim under *Hopwood*, or the "separate

but equal" claim establish a cause of action, since Kamps is not entitled to assert an Equal

Protection claim against Baylor, or the individual defendants.  Kamps has no basis to make an

Equal Protection claim, as that claim is only available against a state actor, which Baylor and

these individual Defendants are clearly not. *Estate of Carmichael v. Galbraith*, 2012 WL13568,

*3 (N.D. Tex. 2012); *Wheat v. Mass*, 994 F.2d 273, 1275-76 (5th Cir. 1993); *King v. HSBC,* 2012

WL, *4 3204190 (W.D. Tex. 2012). Nor is age a suspect class for equal protection purposes.

*See D.A. v. Houston Indep. Sch. Dist.,* 716 F. Supp. 2d 603, 625 (S.D. Tex. 2009); *Tobin v.

Univ. of Maine*, 62 F. Supp. 2d 162, 165-66, (D. Maine 1999);   Thus, Count One must be

dismissed.

## NO CAUSE OF ACTION AGAINST INDIVIDUALS

32.     Plaintiff has also sued certain individuals in their respective official capacities with

Baylor University.  Specifically, Plaintiff has sued President Kenneth Winston Starr, Executive

Vice-President and Provost Elizabeth Davis, and Chair of the Admissions Committee and Chair

of the Scholarship Committee David Swenson, as well as unnamed committee members.

*Complt.*, ¶10-12.  However, § 6104(e) of the Act authorizes only an action for injunctive relief

---

[20]Kamps mistakenly claims that admission by Baylor to quarters other than the Fall quarter is a "separate but equal" accommodation. *Complt.* at ¶109. Here, Plaintiff has admittedly been offered admission into the same law school, with the same facilities and staff, just for a quarter other than the Fall quarter requested and sought by the Plaintiff.  This is certainly different than *Sweatt v. Painter*, 339 U.S. 629 (1950) (denial based upon race - two different schools, etc.).

against "any program or activity receiving Federal financial assistance."  The Act defines "program or activity" as operations of, among other things, "a college, university, or other postsecondary institution, or a public system of higher education" any part of which receives Federal financial assistance.  *See* 42 U.S.C. §6107(4)(B)(I).  As defined, individuals are not included in the term "program or activity."  *See* 42 U.S.C. § 6107(A)-(D).  No cause of action exists as to Defendants Starr, Davis and Swenson.  *Cf. Rasmussen v. California DMV*, 2008 WL 5274611, at *4 n. 3(C.D. Cal. Dec. 17, 2008) (Americans with Disabilities Act provides claim against entity, not individual).  Joinder of individual defendants in their "official capacity" at Baylor is cumulative and not necessary to ensure Baylor's compliance with the Act.  For these reasons, Plaintiff's claims against the individual defendants should be dismissed.

## NANCE SCHOLARSHIP AWARD PROVIDES NO BASIS FOR DISCRIMINATION CLAIMS

33.    According to Kamps' Complaint, the Nance Scholarship is a discretionary  full tuition merit scholarship for graduates of TAMU meeting certain criteria, including admission to BULS.  *Complt.*, ¶¶68-70; Ex. J, ¶13.  In practice, a TAMU committee nominates scholarship candidates, and advises BULS of those nominations.  BULS then determines to whom it will extend scholarship offers.  *Id.* According to Kamps' own allegations, his application did *not* meet the established criteria in 2010, *according to TAMU*. *Id.* at Ex. M (March 22, 2010 TAMU email indicating four applications met the criteria, but Kamps did not); Ex. J, ¶15.  While Kamps claims TAMU sought leave to nominate him, the communications do not actually make that request. *See Complt.*, Ex. M.  Days later, on March 26, TAMU listed Kamps as number five (second alternate after three nominees) on their list.  *Id.* at Ex. R.  Nor did TAMU choose that nomination as appropriate to adjust Kamps' TAMU GPA, despite his apparent argument of favor of adjustment.

34.     Baylor responded on March 29 that Plaintiff was a possible candidate if he was accepted to BULS for Fall 2010. *Id.* By April 6, Plaintiff was listed second on the alternate list by the TAMU Nominating Committee. *Id.* at Ex. Q; Ex. J, ¶15. The scholarship was offered to the three candidates nominated and as ranked *by TAMU. Id.* at ¶93 (two accepted scholarship); *See Complt.,* Ex. J, ¶15.

35.     As to Fall 2011, Plaintiff alleges only that his application for the Nance Scholarship was "active" during this time period. *See Complt.,* ¶147. There is no showing or allegation that he reapplied for – or *was even nominated for the scholarship* by TAMU in 2011. In fact, the Complaint contains proof that Plaintiff was *not* nominated for the Nance scholarship in 2011. *See Complt.* Ex. J, ¶15.

36.     It is admitted that nomination by TAMU is a requirement, thus Plaintiff apparently failed to qualify for discretionary consideration by BULS in both Fall 2010, and 2011. Accordingly, Counts Two, Three, Five and Seven fail to state a claim and should be dismissed.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendants pray that this Motion to Dismiss for Lack of Jurisdiction, and/or Failure to State a Claim, be granted dismissing Plaintiff's claims and this case, and to such other and further relief to which they are justly entitled.

Respectfully submitted,

BY: _____
ANDY MCSWAIN
State Bar No. 13861100
KEITH DORSETT
State Bar No. 06012600
DAN N. MACLEMORE
State Bar No. 24037013
FULBRIGHT ■ WINNIFORD
A Professional Corporation
Attorneys at Law

P.O. Box 445
Waco, Texas  76703-0445
(254) 776-6000/Telephone
(254) 776-8555/Facsimile

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on the 6th day of November, 2012, a true and correct copy of the foregoing has been forwarded to all counsel of record accordance with the Federal Rules of Civil Procedure by filing with the CM/ECF system of the United States District Court of the Western District of Texas, Waco Division:

C. Michael Kamps
214 Glenn Avenue
Rockwall, Texas 75087
Telephone:    (214)478-1180
Facsimile:    (972)692-5857
kamps@heritagefunding.com

Andy McSwain
Keith Dorsett
Dan N. MacLemore

K:\AEM\482\48288\Pleadings\Motion - dismiss for failure to state a claim.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

C. MICHAEL KAMPS,                                §
  Plaintiff,                          §
               §
V.                                               § CIVIL ACTION NO.: W-12-CV-283
               §
BAYLOR UNIVERSITY,                               §
KENNETH WINSTON STARR, in his                    §
official capacity as President of Baylor         §
University, ELIZABETH DAVIS, in her              §
official capacity as Executive Vice President    §
and Provost of Baylor University, DAVID          §
SWENSON, in his official capacity as Chair       §
of the Admissions Committee and Chair            §
of the Scholarship Committee of Baylor           §
Law School, and Members of those                 §
Committees,                                      §
  Defendants.                          §

<u>O R D E R</u>

   Came on to be considered Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6).   The Court finds the Motion has merit and should be granted. Accordingly, it is

   ORDERED that Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) is GRANTED.

   SIGNED this _____ day of _____, 2012.


         _____
         WALTER S. SMITH, JR.
         United States District Judge